Sidney A. Tarrson and Bobette Tarrson v. Commissioner.
Tarrson v. Comm'r
Docket No. 1090-64.
United States Tax Court
T.C. Memo 1966-133; 1966 Tax Ct. Memo LEXIS 146; 25 T.C.M. (CCH) 671; T.C.M. (RIA) 66133; June 20, 1966
Richard Weinberger, 77 W. Washington Blvd., Chicago, Ill., for the petitioners. Nelson E. Shafer, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion *146 MULRONEY, Judge: The respondent determined deficiencies in petitioners' income tax for 1957, 1958 and 1959 and an addition to tax for 1959, as follows: Addition to Tax,
Sec. 6651(a),
I.R.C. of
Year
Deficiency
1954
1957
$20,238.87
1958
78,061.85
1959
14,848.83
$742.44 Petitioners do not contest some of the adjustments made to their income in the notice of deficiency. The only issue remaining before us is whether certain amounts which petitioner Sidney A. Tarrson withdrew or received from two corporations, directly or indirectly, were disbursements *147 taxable to him as dividend income. Findings of Fact Some of the facts were stipulated and they are so found. Sidney A. Tarrson and Bobette Tarrson, husband and wife, are residents of Chicago, Illinois. They filed joint income tax returns (which were not introduced in evidence) for the years 1957, 1958 and 1959 with the district director of internal revenue, Chicago, Illinois. Prior to October 1956 petitioner Sidney A. Tarrson was the sole proprietor of a toy manufacturing and distributing company. On or about October 22, 1956 the Sidney A. Tarrson Co. was organized to function as a distributor of toys, and the business assets of the sole proprietorship were transferred to the corporation for 2,000 shares of common stock with a $10 par value, or a total of $20,000, and for a credit in the amount of $9,434.14 on the corporation's books representing the balance due to petitioner for his proprietorship assets. [1]
A savings account (No. XX4936) at the Lake *148 Shore National Bank, Chicago, Illinois, in the amount of $4,152.12 was included among the assets transferred by petitioner to the Sidney A. Tarrson Co. Such figure was erroneous and should have reflected the actual account balance of $405.19. On or about October 22, 1956 the Johnee Company was formed with a capital stock of $1,000 to furnish labor (fabricating or assembling toys) for the Sidney A. Tarrson Co. Petitioner was president and controlling shareholder of the Sidney A. Tarrson Co. and the Johnee Company, both of them Illinois corporations. Petitioner and his wife, Bobette, and a public accountant, Milton R. Schachtman, were the directors of both corporations. The Johnee Company was liquidated in January 1959 and its business was taken over by a newly formed partnership consisting of petitioner and his wife. Petitioner received a salary from both the Sidney A. Tarrson Co. and the Johnee Company. None of the salary was used to repay any of the withdrawals from the corporations hereinafter described. During the years in issue the petitioner made numerous withdrawals on a regular basis from the Sidney A. Tarrson Co. which were debited to loan accounts on the corporation's *149 books. During this same period credits were also made to these loan accounts representing sales commissions or bonuses payable to petitioner by the corporation, [2] some sporadic cash payments and other adjustments. Respondent, after disallowing some of the credit entries made to these *150 loan accounts, determined that the net debits to the loan accounts on the books of Sidney A. Tarrson Co. constituted corporate distributions to petitioner or for his benefit and were taxable to him as dividends in 1957, 1958 and 1959 in the respective amounts of $4,997.99, $17,260.52 and $14,272.48. These net amounts were computed by respondent as follows: 1957
1958
1959
Charges against petitioner (debits)
$14,225.12
$30,010.62
$51,691.07
Other (including investments in mortgages and in
another corporation)
2,081.78
23,533.33
2,113.04
$16,306.90
$53,543.95
$53,804.11
Less allowable credits (mostly sales commissions or
bonuses - see footnote 2)
$11,308.91
$36,283.43
$39,531.63
Net amount taxable to petitioner as corporate divi-
dends
$ 4,997.99
$17,260.52
$14,272.48
Petitioner also made frequent withdrawals from the Johnee Company which were reflected on open loan accounts on the books of the corporation. Debits to these accounts generally represented personal investments made by petitioner with corporate funds and the withdrawals by petitioner. Some sporadic credit entries were also made in these loan accounts. When the Johnee Company *151 was liquidated in January 1959 its accumulated earnings were approximately $111,000, and the loan account on the corporation's books showed the amount of $105,894.79 receivable from petitioner as a result of the periodic withdrawals of cash by petitioner from the corporation. The amount of $105,894.79 includes about $5,800 in salary payments in 1958 and 1959 which were reclassified as an account receivable on the corporation's books at about the time of the liquidation. Petitioner and his wife reported a long-term capital gain of $111,830.61 on their joint income tax return (presumably for 1959) as a result of the liquidation of the Johnee Company computed as follows: Assets received
Sidney A. Tarrson Acc. Rec.
$105,894.79
Others (net)
6,935.82
$112,830.61
Less: stock basis
1,000.00
Long-term capital gain re-
ported
$111,830.61
Respondent in his statutory notice of deficiency determined that the net charges (debits) to the loan account on the books of Johnee Company for 1957 and 1958 in the respective amounts of $25,416.22 and $73,992.74 constituted corporate distributions to petitioner or for his benefit and taxable to him as dividends in those years. *152 During the years here relevant neither the Sidney A. Tarrson Co. nor the Johnee Company formally declared any dividends. The savings account (No. XX4936) at the Lake Shore National Bank (which savings account was among the proprietorship assets transferred by petitioner to the newly-formed Sidney A. Tarrson Co. in October 1956) which was carried on the corporate books and recorded as an asset of the Sidney A. Tarrson Co., was maintained in petitioner's name, who also retained the savings account passbook. The Sidney A. Tarrson Co. maintained a ledger account which purported to show balances, withdrawals and deposits in the savings accounts that were made by the petitioner. However, the ledger account did not disclose all of petitioner's withdrawals from nor all of the deposits to the savings account. A comparison of the pertinent bank records with those of the Sidney A. Tarrson Co. discloses the following discrepancies 1957
1958
1959
Net bank withdrawals
by petitioner not re-
flected on books of
Sidney A. Tarrson
Co.
$13,000
$12,500
$9,100
Net bank deposits by
petitioner (in excess
of) or less than
amounts shown on
corporate books
(6,300)
2,500
(1,000)
Difference
$ 6,700
$15,000
$8,100
*153 Petitioner made investments with the net withdrawals from the savings account as indicated generally by the above computation. Sometime in 1959, in an effort to reconcile the discrepancies between the savings account and the corporate records, a debit entry was made for the difference to petitioner's loan account on the books of the Sidney A. Tarrson Co. Respondent in his notice of deficiency determined that the amounts of $6,700, $15,000 and $8,100 represented corporate disbursements to petitioner or for his benefit and were taxable to him as dividends in the years 1957, 1958 and 1959, respectively. On or about April 10, 1959 the Sidney A. Tarrson Co. issued its check in the amount of $1,080 as a rental deposit on petitioner's personal apartment and recorded the transaction under "Other Assets - Deposits". On or about July 31, 1961 this entry was reclassified by an adjusting journal entry and a charge for this amount was made to petitioner's officer's loan account. Respondent in his statutory notice of deficiency determined that the rental deposit of $1,080 was a corporate disbursement for petitioner's benefit in 1959 and was taxable to him as a dividend in that year. Opinion
*154 The question before us is whether the net withdrawals by petitioner from two corporations controlled by him, the net withdrawals from a savings account which was regarded as an asset of one of the two corporations (the Sidney A. Tarrson Co.), and a check issued in 1959 by the Sidney A. Tarrson Co. as a rental deposit on petitioner's personal apartment should be taxable to petitioner as constructive or preferential corporate dividends or, as petitioner contends, should be treated as corporate loans to petitioner. The issue is one of fact, and whether a withdrawal is a loan or, on the contrary, an advancement in lieu of dividends depends upon the existence at the time of the advancement of an intent on the part of the stockholder to pay it back, and on the part of the corporation to enforce such payment. Atlanta Biltmore Hotel Corp. v. Commissioner, 349 F. 2d 677, affirming on this issue a Memorandum Opinion of this Court, and Clark v. Commissioner, 266 F. 2d 698. In Elliott J. Roschuni, 29 T.C. 1193, affirmed per curiam 271 F. 2d 267, we stated that "[whether] withdrawals from a corporation represent loans or taxable distributions *155 depends on all the facts and circumstances surrounding the transactions between the stockholders and the corporation", and that "[when] the withdrawers are in substantial control of the corporation, such control invites a special scrutiny of the situation." The record reveals a steady pattern of frequent withdrawals from the two corporations in large amounts over the years in issue. Withdrawals were recorded in various open accounts on the books of the two corporations. None of the withdrawals was evidenced by notes; petitioners paid no interest on the substantial amounts outstanding; and no collateral security was ever furnished to the corporations. In connection with the net withdrawals from the Johnee Company in 1957 and 1958 of $25,416.22 and $73,992.74, respectively, it is significant that such net withdrawals were practically equivalent to the corporation's accumulated earnings of about $111,000 over its corporate life of slightly more than two years. [3] Neither the Johnee Company nor the Sidney A. Tarrson Co. paid any formal dividends during the years in question. Finally, it appears that a substantial portion of the amounts withdrawn from the corporations was used by petitioner *156 to make various personal investments, including stock investments and various holdings in real estate. There can be no doubt as to the personal nature of the rental deposit of $1,080 paid by Sidney A. Tarrson Co. in 1959 on petitioner's personal apartment. The casual method of bookkeeping applied throughout is indicated here by the fact that such payment was recorded by the corporation under "Other Assets - Deposits", and that it wasn't until July 1961 that the entry was reclassified by a journal entry and a charge made for this amount to petitioner's open account. This same casual approach is further revealed by the fact that the ledger account on the books of the Sidney A. Tarrson Co. which purported to show the balances, withdrawals and deposits in its asset; the ledger account of the savings account No. XX4936 which, incidentally, was kept in petitioner's name (we are told Illinois law prohibits corporations from having savings accounts in corporate names) failed significantly to disclose all of the petitioner's withdrawals and deposits to the account over the years 1957, 1958 *157 and 1959. Petitioner argues broadly that all of the above withdrawals, direct and indirect, were loans and therefore not taxable. Unfortunately, the record yields little more than petitioner's self-serving avowals that he intended to pay these amounts back to the corporations. We do have, of course, the profuse assertions of Milton R. Schachtman, petitioner's accountant for many years and a director of both corporations, that he had knowledge of all of the frequent withdrawals by petitioner from the corporations, that he (as director of the corporations) considered such withdrawals as loans, and that he was reassured by petitioner that such loans would be repaid. Considering the relationship of the parties, it will suffice to say that we are singularly unimpressed by Schachtman's testimony along these lines. It also appears that Schachtman was unaware for considerable periods of time of some of the discrepancies in the corporate records involving petitioner's withdrawals, which can hardly be squared with Schachtman's professed vigilance over the corporate funds. We have also considered the sporadic credit entries in the open accounts on the books of both corporations. It appears *158 that the credits in the Sidney A. Tarrson Co. open accounts were mainly sales commissions or bonuses which, for most of the period here involved, were voted by the corporation at the end of the fiscal year, and respondent has allowed for such credits in computing petitioner's net withdrawals. We do not believe that these one-shot credits are, under the circumstances of this case, very persuasive evidence that the withdrawals were actually intended as loans to be repaid, especially when petitioner would continue without interruption in the ensuing corporate fiscal year his regular practice of frequent withdrawals from the corporation, with mounting balances, for his own purposes. Petitioner also disputes the correctness of the net withdrawals as computed by the respondent. Petitioner makes some argument that the sales commissions should have been credited monthly (instead of at the end of the corporate fiscal year) to the open accounts, which would have the effect of altering the net withdrawals outstanding as of the end of the petitioner's taxable years here in isue. Not only is there nothing in the record to support this contention, which appears to us as nothing more than a belated *159 attempt to remake the facts of prior years, but all of the available evidence, as outlined in our findings of fact, supports respondent's treatment of these credits for sales commissions and bonuses. When petitioner transferred the business assets of his sole proprietorship to the newly formed Sidney A. Tarrson Co. in October 1956 he received 2,000 shares of the corporation's stock with a par value of $10 per share and a credit of $9,434.14 in an open account on the books of the corporation as owing to petitioner. The savings account (No. XX4936) was included among the transferred assets in the amount of $4,152.12, but it has been stipulated that such figure was erroneous and should have reflected the actual account balance of $405.19. We agree with respondent that under the special facts here this overstatement of a bank account asset by $3,746.93 should properly reduce to that extent the amount of the credit ($9,434.14) in the open account. We have also considered arguments by the parties that adjustments should be made to the basis of the 2,000 shares of stock received by petitioner in connection with the original transfer of assets to the Sidney A. Tarrson Co. and find such *160 arguments to be lacking in merit. Nor do we believe that this record justifies any further reduction in the amount of the credit to the open account in addition to the reduction made necessary by the overstatement of the savings account balance. Nor is there any evidence in the record to support a thin argument made by petitioner that he should be allowed a credit in the open accounts on the books of the Sidney A. Tarrson Co. for certain investments made by petitioner individually and then purportedly transferred to the corporation. It appears that petitioner made three separate investments in mortgages or real estate totaling about $20,800 and that on July 31, 1959 a credit entry was made in one of the open accounts on the corporation's books purporting to record a transfer of such assets to the corporation. However, petitioner admitted at the trial that he "wanted to put some of the investments in the corporation to make my statement look better for the bank." It also appears from the evidence that this entry was later reversed. On the basis of the evidence before us, we agree with respondent that this credit entry in the open account would be an improper reduction of the debit *161 balance in petitioner's open account on the books of the Sidney A. Tarrson Co. for the period involved. We sustain respondent's computation, with the adjustments noted, of the net withdrawals from the two corporations during the years here relevant. We conclude, on the basis of the whole record, that such net withdrawals constituted distributions to petitioner taxable as dividends. [4]
Decision will be entered under Rule 50. Footnotes
1. At the special meeting of the corporation's board of directors held on October 22, 1956 the corporation was authorized to issue a note in the amount of $9,434.14 to petitioner, but apparently the note was never issued.↩
2. On July 31, 1957 at a special meeting of the board of directors of Sidney A. Tarrson Co. a resolution was adopted to pay petitioner a bonus of $10,408.91 for the period ending on that date. Similarly, on July 31, 1958, a resolution was adopted to pay petitioner a bonus of $36,283.43 representing 1 1/4 percent of the corporation's net sales. Petitioner reported these sales commissions or bonuses, as well as the sales commissions of about $28,200 for the period ended July 31, 1959, in the year in which the corporation made an annual provision therefor. From August 1, 1959 through December 31, 1959 the Sidney A. Tarrson Co. recorded petitioner's sales commissions on a monthly basis. Petitioner did not report these amounts as part of his gross income for the year 1959 but continued to report the entire bonus income in his return for the calendar year in which the corporation's fiscal year ended.↩
3. The Johnee Company was formed on or about October 22, 1956 and was liquidated in January 1959.↩
4. Such distributions would be taxable as dividends to the extent of corporate earnings and profits. Section 316(a) of the Internal Revenue Code of 1954. Petitioner made no argument that the payments were not made out of available corporate earnings and profits. See Commissioner v. Makransky, 321 F. 2d 598, affirming 36 T.C. 446↩.